Kevin Koelbel, SBN 016599
Kyle J. Shelton, SBN 027379
**LAW OFFICES OF KEVIN KOELBEL, P.C.**
7303 W. Boston Street
Chandler, AZ  85226
(480) 705-7550
(480) 705-7503 Fax
kevin@koelbellaw.com
kyle@koelbellaw.com

Attorneys for Plaintiff

THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Nicole Braun, a married woman,<br>            Plaintiff,<br>   v.<br>USAA Group Disability Income, an ERISA benefits plan; USAA's Executive Vice President, People Services, plan administrator; United Services Automobile Association; Plan Sponsor,<br>            Defendants. | **Case No.**<br><br>**COMPLAINT** |

For her Complaint Plaintiff alleges as follows:

1. This action arises under the Employee Retirement Income Security Act [ERISA] of 1974, 29 U.S.C. §§ 1001 *et seq.*

2. This Court has jurisdiction under 29 U.S.C. § 1132(e)(1).

3. Plaintiff Braun is a resident of the State of Arizona, Maricopa County and venue is proper in this District under 29 U.S.C. § 1132(e)(2).

4. Defendant USAA Group Disability Income Plan (the "Plan") is an ERISA benefit plan providing long-term disability ("LTD") benefits to full time employees of the United Services Automobile Association ("USAA").

5. USAA's Executive Vice President, People Services is the Plan Administrator.

6. USAA is the Plan Sponsor.

7. The Plan is insured by a policy issued by Liberty Life Assurance Company of Boston ("Liberty").

8. As the insurer and claims administrator Liberty operates under an inherent conflict of interest.

9. USAA employed Braun full-time as a telephonic customer service representative.

10. Braun was, at relevant times, a Plan participant.

11. The USAA Group Disability Income Plan, Summary Plan Description ("Comprehensive SPD"), which references an LTD Plan, defines "Eligible Employee" as a "Regular Employee," which means: (1) a common law employee of USAA or a Participating Employer, (2) directly compensated from the Employer's ordinary domestic payroll, and (3) not in one of the excluded categories.

12. Braun met the requirements of an "Eligible Employee."

13. As a full time employee of USAA, Braun was eligible for participation in the short-term disability program, as well as the long-term disability program.

14. Braun suffers from lyme disease, which is an infection caused by the bacterium Borrelia burgdorferi and is transmitted by a tick bite.

15. The Plan determined Braun was disabled and entitled to short-term disability benefits.

16. The Plan determined Braun met the own-occupation definition of disabled entitling her to long-term disability benefits.

17. The definition of disability under the Plan changed from "own occupation" to "any occupation" on February 22, 2012.

18. Braun's condition has not improved since the Plan first found her disabled.

19. Liberty informed Braun of its decision to deny her long-term disability benefits on June 1, 2012.

20. Liberty informed Braun that she could request a review of the denial, but that it must be sent within 180 days of the receipt of its June 1, 2012 letter.

21. The Plan has misrepresented this requirement of ERISA to Plan participants.

22. Braun asked Liberty for a 60 day extension beyond the 180 days so that her legal counsel could review the claim file, determine what additional evidence may be necessary, gather that evidence, and prepare an appeal.

23. Braun wished to obtain a functional capacity exam to include in her appeal.

24. Braun informed Liberty that regulations require claim procedures to allow "at least 180 days following receipt of a notification of an adverse benefits determination within which to appeal the determination" citing 29 C.F.R. §2560.503-1(h)(3)(i) and (4).

25. Braun is not currently receiving benefits, meaning Liberty Mutual would have suffered no prejudice allowing more than the minimum amount of time guaranteed by the regulation.

26. Given that the extension of time requested would not have prejudiced Liberty Mutual in any way, its refusal to accommodate Braun by allowing more than the minimum allowed under the law was a procedural irregularity and evidence of Liberty's failure to provide the full and fair review required by ERISA, under 29 U.S.C. § 1133 (requiring "full and fair review").

27. The Plan is required, as part of the appeal process, to establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination under a full and fair review. 29 C.F.R. § 2560.503-1(h)(1).

28. A full and fair review includes access to all relevant documents. 29 C.F.R. § 2560.503-1(h)(2).

29. Liberty informed Braun on February 25, 2013, after reviewing her appeal, it was confirming its decision to deny her long-term disability benefits.

30. The Plan claims its termination of benefits was based on a lack of medical

documentation to support Braun's claim for her benefits.

31. The Plan's letter terminating benefits does not explain how the evidence that had supported her claim, when supplemented with evidence of continued symptoms, was insufficient to support continued benefits.

32. The Plan referred Braun's claim to a Vocational Case Manager ("VCM").

33. The VCM's conclusions were based on Braun's "training, education, and experience."

34. The list of documents identified in the Plan's February 25, 2013 letter terminating benefits as having been reviewed in reaching the decision to terminate Braun's benefits does not include any document likely to include her "training, education, and experience."

35. The Plan determined that Braun was disabled from her own occupation, but the VCM includes Braun's "own occupation" among the jobs Braun is now purportedly capable of performing.

36. Given the prior determination of the sufficiency of the evidence supporting disability and that her treating physicians consider her condition unimproved, the only reasonable conclusion is that she is still disabled.

37. The Plan is estopped from asserting that Braun is not disabled.

38. The Plan engrafted an "objective medical evidence" requirement for benefits and relied on that standard in denying her disability benefits, specifically demanding objective evidence of cognitive impairment.

39. The definition of disability in the policy insuring the Plan does not require objective medical evidence.

40. Liberty's June 1, 2012 denial letter relies on a lack of objective evidence (specifically the alleged lack of conclusive "serological testing") to prove Braun's Lyme disease at the expense of her other physical symptoms.

41. The demand for "objective evidence" results in the incorporation of undisclosed limitations on LTD benefits.

42. Inserting an "objective evidence" requirement into the Plan is evidence of a conflict of interest.

43. The plan administrator may not interpret a plan to impose an additional requirement for eligibility that is contrary to or absent from the existing terms of the plan.

44. The Plan relied upon an improper definition when it failed to disclose its reliance on the "objective medical evidence" standard.

45. It is an abuse of discretion for the Plan to use limitations not present in the plan to deny coverage.

46. Liberty may not interpret a plan to impose an additional requirement for eligibility that is contrary to or absent from the existing terms of the plan.

47. Absent any evidence casting doubt on subjective complaints, denial of benefits for lack of objective evidence is unreasonable and an abuse of discretion.

48. Braun's medical records contain consistent, subjective complaints that are not doubted by her treating professionals, and are consistent with the objective evidence in this case.

49. Liberty paid Dr. Michael Silverman to conduct a peer review on Braun.

50. Silverman does not have expertise in chronic Lyme disease.

51. Lyme disease is a clinical diagnosis, which cannot rely on serological or purely objective testing.

52. Silverman focused exclusively on the lack of conclusive serological testing, or "objective" evidence.

53. Liberty hired a surveillance team to monitor Braun.

54. Silverman noted in his evaluation that the surveillance report showed "a frail appearing female with mobility requiring a cane at various times to ambulate."

55. Despite this evidence supporting Braun's subjective symptoms, Liberty and Silverman did not weigh this in their analysis.

56. Dr. David C. Korn, Braun's physician, conducted a CD57 (or Stryker Panel) three times on Braun, and determined that "each result indicated a positive Lyme diagnosis."

57. Dr. Korn has stated Braun is fully disabled.

58. This conclusion is consistent with the decision to provide STD benefits to Braun, the Plan's decision to pay own-occupation LTD benefits, and its decision to pay any-occupation benefits through March 2010.

59. Liberty ignores Dr. Korn's positive diagnosis of Lyme disease.

60. The Plan did not explain its rejection of Braun's treating physician's opinions.

61. On September 10, 2012, Braun filed her appeal with Liberty by faxing and mailing a copy of her appeal.

62. The Plan had, under applicable regulations, 45 days to render a decision.

63. The Comprehensive SPD also states a decision will be rendered within 45 days.

64. If prior to the expiration of the 45 days the administrator determines that, due to matters beyond the control of the plan, a decision cannot be rendered within the 45 days, and notifies the claimant of the circumstances requiring the extension, and the date the plan expects to render a decision, the time may be extended for a maximum of another 45 days. *See* 29 C.F.R. § 2560.503-1(f)(3).

65. Forty five days from November 25, 2012 was January 9, 2013.

66. The Plan violated ERISA regulation by not making a decision or notifying Braun of the need for more time by January 9, 2013.

67. On February 25, 2013, the Plan notified Braun that it was upholding its

termination of benefits.

68. The Plan's February 25, 2013 letter includes new reasons for the termination of benefits that were not included in the March 13, 2012 letter terminating benefits.

69. That letter reiterates the misrepresentation that ERISA allows only 180 days to submit an appeal.

70. Braun did not receive a full and fair review because, Liberty failed to consider all the medical evidence, Liberty misrepresented ERISA regulations, Liberty provided only the minimum amount of time to appeal even though allowing additional time would not prejudice the Plan, Liberty did not meet the 45 day deadline to make a decision on appeal, and Liberty applied standards that are not part of the Plan.

## COUNT I
### (Recovery of Plan Benefits)

71. All previous paragraphs are incorporated by reference.

72. The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002. Defendants are the Plan, plan administrators or plan fiduciaries of the Plan under ERISA.

73. The Plan represents it provides LTD coverage and promises to provide LTD benefits until Braun is no longer disabled under the terms of the Plan.

74. Braun became disabled on August 26, 2009 and continues to be disabled and is unable to perform the duties of her occupation or any other gainful occupation under the terms of the Plan. She has claimed the benefits under the Plan to which she is entitled.

75. Braun reasonably expected that her conditions met the requirements of Total Disability as defined by the Plan and that she would receive benefits under the Plan until her normal retirement age or until she was no longer disabled.

76. Despite the coverage of Braun's disability, the Plan has improperly denied LTD benefits to Braun in breach of the Plan.

77. The Plan's decision to terminate Braun's benefits was influenced by an improper conflict of interest.

78. The Plan improperly inserted terms into the Plan that substantially altered the definition of disability under which Braun is entitled to benefits.

79. Braun has exhausted her administrative remedies.

80. The Plan acted at all times under a conflict of interest.

81. The Plan's conflict of interest influenced its decision to terminate Braun's benefits.

82. The Plan acted in an arbitrary and capricious manner.

83. The Plan violated the terms and conditions of the Plan.

84. The Plan's decisions and failure to act on Plaintiff's appeal constitute an abuse of discretion.

85. The Plan's decisions and failure to act on Plaintiff's appeal are in violation and breach of fiduciary duties owed to Plaintiff.

86. The Plan failed to provide Plaintiff with a full and fair review of her claim.

87. Plaintiff has suffered economic damage as a result of the acts of Defendants.

88. The Defendants are not entitled to an arbitrary and capricious standard of review of their decision in this action because the Plan did not reserve discretionary authority to the Plan administrator, the Plan has no provisions or procedures for delegation of discretionary authority or the Plan did not delegate discretionary authority according to the terms of the Plan.

89. Pursuant to the coverage provided in the LTD Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal and state common law, Braun is entitled to recover all benefits due under the terms of the LTD Plan, and to enforce her rights under the terms of the LTD Plan. Braun is further entitled, under the terms of ERISA 29 U.S.C. § 1132(a)(1)(B) and to the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and

2202, to clarification in this action in this Court of her rights to future benefits under the LTD Plan.

90. Braun is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of her disability benefits.

91. Pursuant to 29 U.S.C. § 1132(g), Braun is entitled to recover her attorneys' fees and costs incurred herein from the Plan.

92. Braun is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid.

## COUNT II
### (Breach of Fiduciary Duty)

93. All previous paragraphs are incorporated by reference.

94. The Plan and Plan Administrator owed fiduciary duties to Braun.

95. The Plan's failure to act timely in response to Braun's appeal, engrafting additional Plan terms, failing to give an extension for Braun's appeal, and misrepresentation of ERISA regulations are breaches of its fiduciary duties.

96. The Plan failed to discharge its duties with the care, skill, prudence, and diligence under the circumstance then prevailing that a prudent man acting in like capacity and familiar with such matters would use.

97. As a direct and proximate result of the breaches of fiduciary duty, Braun incurred financial expense, including that resulting from pursuing an appeal of the Plan's wrongful and improper denial of benefits.

WHEREFORE, Braun requests:

1) Plan benefits, pursuant to 29 U.S.C. § 1132(a)(1)(B);

2) An equitable surcharge or make-whole remedies to fully compensate her for the Plan's and the Plan Administrator's breaches of fiduciary duty;

3) Declaration and enforcement of her rights under ERISA and the Plan;

4) An injunction against the Plan from misinforming plan participants of ERISA regulations and requiring compliance with ERISA regulations and Plan terms;

5) Attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1);

6) For an award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

7) Such further relief as the court deems just and proper.

Dated this 19th day of September 2013,

                                LAW OFFICES OF KEVIN KOELBEL, P.C

                                By: s/Kevin Koelbel
                                    Kevin Koelbel
                                    Kyle Shelton
                                    Attorney for Plaintiff

LAW OFFICES OF KEVIN KOELBEL, P.C.
7303 W. Boston Street
Chandler, AZ 85226
(480) 705-7550